UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| | : | No. 3:5-CR-40-VLB |
| v. | : | |
| | : | AUGUST 14, 2020 |
| SHEMAR BERRY | : | |
| Defendant. | : | |

RULING AND ORDER ON MOTION TO REDUCE SENTENCE [ECF No. 86]

Before the Court is Shemar Berry's Motion to Substitute the Remaining Part of Sentence with Halfway House Placement pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). [ECF No. 86]. Mr. Berry seeks compassionate release on the ground that the pandemic has effectively lengthened his imprisonment because he otherwise would have been considered for re-entry services at this point in his sentence, and the absence of those services increases his likelihood of recidivism. *Id.* The Government defers to the Court on this motion. *Id.* Probation takes no position as to this motion. The Court denies Mr. Berry's motion because he has not shown that he had a reasonable expectation of early release to reentry services at sentencing and because the relief he seeks will not advance the Court's goals at sentencing.

I.     Background

On April 12, 2006, Mr. Berry pled guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). On February 13, 2007, the Court (Droney, J.) sentenced him to 180 months of imprisonment, followed by 36 months of supervised release. At the time, Mr. Berry

related that he had used marijuana and alcohol but had not used or experimented with any other substance. *See* [ECF No. 88 ¶ 42].

Mr. Berry began his term of supervised release on July 19, 2019, having served over 14 years in prison. He struggled on supervised release from the outset, testing positive for drugs and incurring low-level state charges.

In late July, Mr. Berry tested positive for amphetamines. [ECF No. 80]. On August 1, Probation recommended that Mr. Berry be placed on curfew with electronic monitoring and that he be required to attend intensive outpatient drug treatment, and the Court so modified his conditions. [ECF Nos. 66, 67]. Although Mr. Berry attended his IOP and complied with his curfew, he continued to use drugs, and tested positive for PCP on September 5 and October 15. [ECF No. 75 (Mot. for Release) ¶3]; [ECF No. 70 (Petition for Warrant)]; [ECF No. 80 (Final Viol. Report)]. Six days after his October positive test, he reported to U.S. Probation to discuss requirements for residential placement and to receive further instructions. [ECF No. 70]. The next day he was arrested by the New Haven Police Department, following a complaint of threatening and harassment from a store owner. *Id.* At that time, it was noted that Mr. Berry possessed drugs. *Id.* The Probation Office petitioned the Court to issue a warrant, which the Court did. *Id.* Following a hearing in late October, the Court (Merriam, M.J.) ordered Mr. Berry detained as he had failed to show by clear and convincing evidence that he would not pose a danger to any other person or the community. [ECF No. 69].

On November 6, 2019, Mr. Berry filed a consent motion for release from custody for treatment, which the Court granted. [ECF No. 75 (Mot.), 76 (Order)]. Mr. Berry

engaged in drug treatment, including 30 days of inpatient treatment at Grant Street Partnership throughout November, as well as intensive outpatient treatment, but he continued to struggle with addiction and was unsuccessfully discharged on December 27 due to excessive absences and continued drug use. *Id.* After he was discharged from Grant Street, he presented at and attempted to be admitted to two separate programs in the last week of December 2019: one sent him to the ER instead, and the other rejected him because it found he did not need to detox. [ECF No. 83 (1/6/20 Hr'g Tr.) at 11:24:41-11:35:00 AM].

On January 6, 2020, Mr. Berry appeared in front of the Court for a violation hearing. He had pending state charges and had incurred several positive drug tests. In addition to his December attempts at treatment, he had done screenings for several rehabilitation programs the morning of the hearing: one was not able to give him an answer, a second had a detox bed available for him the following day, and a third had a walk-in bed at the time of the screening, but counsel was unsure if it would still be available after the hearing. *Id.* During a recess, on the Court's suggestion, he contacted Youth Challenge, which informed him that there would be a bed available but that he would need to detox from alcohol before they would accept him. *Id.* at 12:34-12:35 PM. He also contacted three detox facilities, who were not able to give him an immediate answer on whether they would accept him. *Id.* at 12:34-12:35 PM.

He admitted to using drugs, and, on the basis of that violation, the Court revoked his supervised release and sentenced him to a year and a day in prison, with no term of supervised release to follow.

The Court recommended that Mr. Berry be designated "to an institution in/or close to North Carolina in order to assist with his transition upon release as he plans to reside with his mother in the noted state." [ECF No. 84 (Judgment) at 2]. The Court also "recommended that Mr. Berry engage in drug treatment available at the Bureau of Prisons and any other program that may be of assistance." *Id.*

Mr. Berry was taken into custody at the conclusion of the hearing and was brought to Wyatt Detention Center. On March 20, 2020, he was moved to MDC Brooklyn, where he was held awaiting further transport. Shortly thereafter, the BOP suspended inmate movement until further notice as a result of the pandemic. Mr. Berry remains at MDC Brooklyn today. While at MDC Brooklyn, Mr. Berry has not been offered the opportunity to engage in drug treatment or any other programming, due to the lockdown conditions imposed because of the pandemic. Mr. Berry does not claim he was denied a copy of drug rehabilitation materials, including the Little Red Book, to address his addiction during his abstinence while he was unable to participate in drug treatment while incarcerated.

On April 27, 2020, approximately six months before the end of his sentence, Mr. Berry submitted a request to the warden of MDC Brooklyn, asking to be considered for release to a halfway house. *See* [ECF No. 86-1 (Ex. A) at 1]. On May 6, 2020, he received a denial from the warden. *Id.* at 2. The warden's letter explained that because of his "holdover status," Mr. Berry is ineligible for halfway house placement; the letter similarly found him ineligible for a transfer to home confinement or compassionate release. *Id.* With regard to halfway house

placement, the letter cited BOP Program Statement 7310.04, which states that holdover inmates cannot be referred for halfway house placement. *Id.*

Mr. Berry's state charges have since been resolved. He pled guilty to two misdemeanors (interfering with an officer and criminal trespass), was sentenced to concurrent time, and has completed his state sentence as of August 10, 2020.

## II.   Legal Standard

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to

a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020)

### III.   Analysis

#### A. *Authority*

Mr. Berry has exhausted all avenues for relief. He made a request for halfway house placement or early release directly to the warden of MDC Brooklyn, who rejected his request, explaining that Mr. Berry was ineligible for consideration because of his status as a holdover inmate. *See* [Dkt. 86-1 (Ex. A: April 27 Request)]. Mr. Berry has this status because the BOP suspended inmate movement as a result of the pandemic. This Court now has the authority to decide his motion for release, because (a) having received a denial, Mr. Berry has exhausted his administrative remedies, and/or (b) more than 30 days have elapsed since he submitted his initial request on April 27, 2020.

#### B. *"Extraordinary and Compelling Reason"*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> **(A) Medical Condition of the Defendant.--**
>
> **(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A**

specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

[or]

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A).

Any "other" "extraordinary and compelling reason" may also justify relief. *Id.* at Commentary Application Note 1(D).

The Court considers Mr. Berry's argument that he should be released to a halfway house to fulfill what the parties and the Court would have reasonably anticipated Mr. Berry's sentence to mean at the time of his sentencing, and what services he would have received if not for the coronavirus pandemic. [ECF No. 86 at 5]. Were Mr. Berry not a holdover inmate, 18 U.S.C. 3624(c) would apply to him and he would be considered for community or home confinement:

(1) The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c).[1] Mr. Berry argues that, "but for the pandemic, [he] would have been considered for the reentry services now requested; [he] almost certainly would be receiving those services now" as he has completed the majority of his sentence, and that he is less likely to recidivate if he receives such services before release. [ECF No. 86 at 5-6].

Under the First Step Act, codified at 28 U.S.C. § 3582(c)(1)(A), the Court has authority to reduce a defendant's term of imprisonment and impose new conditions of release, which may include community confinement. *See id.* ("[T]he court… may "reduce the term of imprisonment (and… impose a term of… supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); U.S.S.G. § 5F1.1 ("Community confinement may be imposed as a condition of probation or supervised release.").

Courts have generally declined to grant First Step motions for release to community confinement where an individual is in the Bureau of Prison's custody, in deference to the Bureau of Prison's otherwise exclusive statutory authority to determine where prisoners serve their sentences. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *3 (N.D. Cal. Mar. 25, 2020) (declining to grant First Step motion for release to community confinement); *United States v. Miles*, No. 11 CR. 581 (JFK), 2020 WL 1989290, at *1 n.2 (S.D.N.Y. Apr. 27, 2020) (same); *see also United States v. McMillan*, 741 F. App'x

---

[1] Mr. Berry's expected release date of 10/26/2020 does incorporate "credit toward service of sentence for satisfactory behavior." *See* 18 U.S.C. § 3624(b).

856, 857 (2d Cir. 2018) (Summary Order) ("After a defendant is sentenced, it falls to BOP, not the district judge, to determine ... a defendant's place of confinement.") (quoting *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997)).

Here, Mr. Berry argues that the "extraordinary and compelling" circumstance is exactly that he is a holdover inmate in MDC Brooklyn because of the pandemic, and so the Bureau of Prisons cannot consider him for release to home confinement or community confinement. [ECF No. 86 at 4-6]; *see* BOP Program Statement 7310.04. The Court is not persuaded.

First, although Mr. Berry asserts that he would "almost certainly" be at a half-way house if not for his unusual status, he does not support this assertion. [ECF No. 86 at 4]; *cf. United States v. Tyshawn Coleman*, 17-cr-216-AWT, Doc. #92 (D. Conn. May 20, 2020) (Thompson, J.) (granting unopposed motion for release from custody and to amend conditions of supervised release to require that defendant reside in halfway house for what would have been his remaining term of imprisonment, where defendant was holdover inmate at MDC Brooklyn with six months remaining on sentence and original judgment recommended consideration of residential reentry).  Mr. Berry does not detail the factors the Bureau of Prisons would consider, nor why he would qualify for home or community confinement under those factors. He has not shown that he had a reasonable expectation of release to a halfway house, especially since, at sentencing, he planned to leave the state upon release.

Second, although Mr. Berry points to the merits of halfway houses for individuals like himself who struggle with drug addiction and homelessness, [ECF

No. 86 at 5-6], he would only reside at a halfway house through October 26, 2020 if this motion is granted, with no supervised release to follow. In light of the short length of the proposed stay and the lack of support afterward, the Court is not convinced that a halfway house placement would provide Mr. Berry with meaningful support. In addition, releasing him to a halfway house would not satisfy Mr. Berry's need for drug treatment because he seeks release to a non-therapeutic halfway house, not a therapeutic long-term residential drug treatment facility (and were Mr. Berry to seek release to a drug treatment facility, there is insufficient time for meaningful drug treatment).

These points also distinguish Mr. Berry's cases from the three other cases in which the Court has granted similar motions, which all involved defendants who would go on to an additional three years of supervised release. *Cf. United States v. Quintana*, No. 3:18-CR-216-VLB, 2020 WL 3475216, at *1 (D. Conn. June 25, 2020) (releasing a holdover inmate to home confinement for approximately two and a half months, with three years of supervised release to follow); *United States v. Tyshawn Coleman*, 17-cr-216-AWT, Doc. #92 (D. Conn. May 20, 2020) (Thompson, J.) (defendant also three years of supervised release); *United States v. Donald Canady*, 19-cr-16-JCH, Doc. #70 (D. Conn. May 21, 2020) (Hall, J.) (granting unopposed motion for release from custody and to amend conditions of supervised release to require that defendant reside in halfway house for what would have been his remaining term of imprisonment, where defendant was holdover inmate at MDC Brooklyn with two months remaining on sentence, had

been recommended for drug treatment, and would go on to three years of supervised release).

In addition, granting Mr. Berry's request for compassionate release is not consistent with the 3553(a) sentencing factors. The factors have not changed and their application to Mr. Berry has not changed. The Court sentenced Mr. Berry as it did considering "deterrence, protection of the public, and the defendant's need for correctional, and drug treatment," and to provide him with a period of sobriety and "hit the reset button." [ECF No. 83 at 12:38:00-12:39:00, 12:51:00-12:53:00 PM]. Reducing Mr. Berry's sentence would not accomplish the "need for the sentence imposed" to "protect the public" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

Therefore, the Court does not find Mr. Berry's current holdover status an independent "extraordinary or compelling reason."

IV.    <u>Conclusion</u>

For the reasons given, the Court denies Mr. Berry's motion for compassionate release. If Mr. Berry truly desires recovery, he will follow through with the plan he presented to the Court at his January 2020 hearing, reside with his mother, and take advantage of drug treatment in the community.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: August 14, 2020